IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| ANTHONY CULPEPPER, GINA FRAZIER-MCCUTCHISON, RAY MCKINNEY, and HENRI SIMS,<br><br>Plaintiffs,<br><br>vs.<br><br>DEERE & COMPANY,<br><br>Defendant. | No. C13-2019<br><br>REPORT AND RECOMMENDATION |

This matter comes before the Court on the Motion to Sever (docket number 8) filed by the Defendant on June 21, 2013, the Resistance (docket number 10) filed by the Plaintiffs on July 1, and the Reply (docket number 12) filed by the Defendant on July 11. Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## I. PROCEDURAL HISTORY

On February 13, 2013, Plaintiffs Anthony Culpepper, Gina Frazier-McCutchison, Ray McKinney, and Henri Sims sued Defendant Deere & Company ("Deere") in the Iowa District Court for Black Hawk County. Plaintiffs claim they were terminated from their employment at Deere as a result of race and color discrimination. The action was removed to this Court, and Deere filed its answer on April 12, 2013.

On June 21, 2013, Deere filed the instant motion to sever. Deere argues that the Plaintiffs' claims are independent of each other and should be severed for trial pursuant to FEDERAL RULE OF CIVIL PROCEDURE 42(b). Plaintiffs ask that the motion be denied or, alternatively, that the Court defer ruling on the issue until discovery has been completed.

On July 15, Judge Edward J. McManus referred to the motion to me for a report and recommendation.

## II. RELEVANT FACTS[1]

Anthony Culpepper, an African-American, began working as an assembler at Deere on January 24, 2011. Culpepper had previously worked for Deere for six years under a different supervisor. During his second tenure at Deere, Culpepper was never late, nor was he disciplined. On April 28, 2011, Culpepper was told that he "wasn't a good fit" and fired.[2] According to the petition, while he was employed at Deere the second time, Culpepper "observed a pattern of black employees being treated more unfairly than white employees."[3] In a complaint filed with the Waterloo Commission on Human Rights, Culpepper stated his supervisor, Jake Schraeder, fired five other African-Americans while Culpepper worked at Deere, and treated a white probationary employee more leniently.[4]

Gina Frazier-McCutchison, an African-American woman, began employment as an assembler at Deere on October 18, 2010. Frazier-McCutchison missed two days of work in December 2010 because her daughter and her daughter's newborn twins were hospitalized, and missed several days of work in February 2011 because her grandfather was ill and dying. On April 28, 2011, just shy of the end of her seven-month probationary

---

[1] The basic facts underlying the Plaintiffs' allegations may be gleaned from a review of the Petition at Law (docket number 3) and the complaint forms and questionnaires submitted by the Plaintiffs to the Waterloo Commission on Human Rights (attached to Deere's instant motion as Exhibits A-D).

[2] In his petition, Culpepper claims he was terminated "just shy of the end of his 7-month probationary period," when in fact he was fired after just 3 months. *See* Petition at Law (docket number 3) at 3, ¶ 23.

[3] *Id.*

[4] Culpepper's Complaint Form at 3 (docket number 8-2 at 5).

period, Frazier-McCutchison was told she "wasn't a good fit," and terminated from her employment. In her complaint filed with the Waterloo Commission on Human Rights, Frazier-McCutchison claimed discrimination based on age, race, sex, and color.[5]

Ray McKinney, an African-American, began employment as an assembler at Deere on October 11, 2010. According to the Petition, the person who was charged with training McKinney told him that "I would never qualify you — not for no one of your kind."[6] His supervisor suggested moving him to another position, but instead he was terminated on January 28, 2011, allegedly for "quality issues."[7]

Henri Sims, an African-American, began employment as a production worker with Deere on October 11, 2010. According to the petition, "[a] co-worker in that department refused to train Henri because he is black."[8] Sims was subsequently moved to another department, where he drove a forklift. Sims knocked over some parts with the forklift truck he was driving, and was terminated on March 8, 2011. One member of management allegedly told him he was terminated because he "didn't fit in," while another said he was terminated for knocking over the parts.[9] In a complaint filed with the Waterloo Commission on Human Rights, Sims asserted that he "was told by another co-worker that on Martin Luther King Day, [his trainer] walked the catwalk and said how he hates all blacks and that they should die."[10]

---

[5] Frazier-McCutchison's Complaint Form at 1 (docket number 8-2 at 14).

[6] Petition at Law (docket number 3) at 4, ¶ 28.

[7] *Id.*, ¶ 30.

[8] *Id.*, ¶ 33.

[9] *Id.* at 5, ¶ 36.

[10] Sims' Complaint Form at 3 (docket number 8-2 at 28).

3

## III. DISCUSSION

In its instant motion, Deere asks the Court to "sever Plaintiffs' claims for trial." In support of its request, Deere cites FEDERAL RULE OF CIVIL PROCEDURE 42(b). In their resistance, Plaintiffs note that a request to "sever" under RULE 42(b) is not technically correct. That is, Deere is not claiming misjoinder of parties under RULE 20, or asking to sever Plaintiffs' claims under RULE 21, but is asking instead that there be separate trials pursuant to RULE 42. In 9A Wright & Miller, Federal Practice and Procedure: Civil 3d, § 2387, the authors bemoan the tendency of courts to "talk of 'separate trial' and 'severance' interchangeably." *See also Tardd v. Brookhaven Nat. Laboratory*, 2007 WL 1423642 at *6 (E.D.N.Y. 2007) (noting the distinction between severance under RULE 21 and separate trials under RULE 42, but stating that the court "will consider the same factors under both Rules."). In any event, the parties here agree that the issue is whether separate trials should be ordered pursuant to RULE 42(b).

### A. Applicable Law

FEDERAL RULE OF CIVIL PROCEDURE 42(b) authorizes the Court, in the exercise of its discretion, to order separate trials.[11] Commonly, a party may ask that trial on the plaintiff's claim for liability be separated from trial on the plaintiff's claim for damages. *See, e.g., O'Dell v. Hercules, Inc.*, 904 F.2d 1194 (8th Cir. 1990). Also, multiple claims by a plaintiff, if sufficiently distinct, may be severed for trial. *See, e.g., Eischeid v. Dover Const., Inc.*, 217 F.R.D. 448 (N.D. Iowa 2003). Here, Deere argues that the claims of the four plaintiffs should be separated for trial.

---

[11] "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." FED. R. CIV. P. 42(b).

Judge Michael J. Melloy, while serving as Chief Judge of the Northern District of Iowa, succinctly summarized the law regarding separation of trials pursuant to RULE 42(b):

> Whether or not to bifurcate a trial is left to the sound discretion of the trial court. Courts traditionally consider the following factors when deciding whether to order separate trials: (1) the complexity of the damages issue; (2) potential for juror confusion; (3) overlap of the issues to be tried; and (4) prejudice to either party. In addition, courts may consider (1) whether the issues are triable by the court or by jury; (2) whether discovery has been directed to one trial on all issues; (3) whether the evidence for each issue is substantially different; and (4) the effect bifurcation would have on settlement negotiations. The burden to demonstrate that bifurcation is warranted lies with the moving party. As "a single trial generally tends to lessen the delay, expense, and inconvenience to all concerned . . . separate trials should be the exception, not the rule."

*Cedarapids, Inc. v. CMI Corp.*, 1999 WL 33656876 at *1 (N.D. Iowa 1999) (all citations omitted). *See also O'Dell*, 904 F.2d at 1202 (advising that in exercising their discretion under RULE 42(b), district courts "should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion") (citing *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir. 1983)).

### B. Analysis

Here, Deere argues separate trials are warranted because Plaintiffs held different jobs in different departments, were subject to management and direction by different supervisors, were subject to different decision-makers for the alleged adverse actions, and have sustained different damages. Deere is concerned that if the claims are tried together, a jury could draw improper inferences from evidence offered in support of one plaintiff's claim when considering another plaintiff's unrelated claim. Deere also argues that requiring a jury to hear four unrelated claims simultaneously, and consider four separate

5

claims for damage, would create a substantial risk of jury confusion. Finally, Deere asserts a single trial would be lengthy, and that separate trials would result in judicial economy.

In response, Plaintiffs state that it may be "an absolute coincidence" that they were hired and fired at approximately the same time, and it is possible "that they were subjected to four completely isolated and separate acts of racism."[12] Plaintiffs assert, however, that the close timing of the firings suggests that "these may be more than four completely separate and isolated occurrences."[13] Plaintiffs argue that a decision regarding how the case will be tried should not be made before any discovery is conducted. Furthermore, Plaintiffs dispute Deere's argument that four trials instead of one trial promotes judicial economy.

In arguing that their claims should be tried together, Plaintiffs emphasize that they were hired at about the same time.[14] Plaintiffs also note that they were terminated within a three-month period.[15] I believe, however, that the mere fact Plaintiffs were hired within about three months of each other, and were subsequently fired within about three months of each other, provides little evidence, if any, of discrimination based on race or color. As noted by Plaintiffs, they have not had an opportunity to conduct discovery. Accordingly, the record is silent regarding the total number of employees hired and/or fired by Deere at about that time, whether they were black or white, and the circumstances

---

[12] Plaintiffs' Brief in Resistance (docket number 10) at 4.

[13] *Id.*

[14] McKinney and Sims were hired on October 11, 2010. Frazier-McCutchison was hired one week later, on October 18. Culpepper was hired three months later, on January 24, 2011.

[15] McKinney was terminated on January 28, 2011. Sims was terminated on March 8. Culpepper and Frazier-McCutchison were both terminated on April 28.

surrounding their termination. It should be noted, however, that Plaintiffs have not alleged a "pattern or practice" of discrimination. Courts have stated that "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." *Elliott v. Color-Box, LLC*, 2005 WL 174872 at *3 (N.D. Iowa 2005) (quoting with approval *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004)). However, pattern or practice evidence may be relevant in establishing an individual claim of disparate treatment. *Id. See also Stevens v. Gravette Medical Center Hosp.*, 998 F. Supp. 1011, 1015 (W.D. Ark. 1998). Accordingly, at this stage of the proceeding, it is unclear whether evidence of discrimination against another employee will be admissible at trial.[16]

Deere suggests that the only commonality between Plaintiffs' claims is that they all allege race discrimination against the same employer. In *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 581 (E.D.N.Y. 1999), the Court ordered separate trials when there was no evidence that the claims of the two plaintiffs were "related in any respect other than the fact that they worked for the same company and they are both based on race discrimination." Similarly, in *Carrington v. Vertex Aerospace, LLC*, 2004 WL 838014 at *1 (W.D. Tex. 2004), the Court severed the claims of two plaintiffs in a race discrimination case where "the connection between the plaintiffs is nothing more than their allegations of discrimination by a common employer pursued by a single attorney." Here, Deere asserts in its motion that the Plaintiffs held different jobs in different departments, were subject to management and direction by different supervisors, were subject to different decision-makers for the alleged adverse actions, and have sustained different damages. According to Deere, the witnesses, exhibits, and claims for damages for each Plaintiff are independent of each other. Because each Plaintiff will have to present individualized proof in support of his or her respective claim, a single trial may result in

---

[16] This issue was not briefed by the parties, and I am not suggesting what the Court's resolution of that issue may be.

substantial evidence being introduced regarding one Plaintiff, which is wholly unrelated to the claims of the other three Plaintiffs. *Thompson v. Sanderson Farms, Inc.*, 2006 WL 2559852 at *4 (S.D. Miss. 2006) (finding that separate trials were appropriate when "each plaintiff will have to present individualized proof in support of his or her respective claims").

Regarding judicial economy, I believe — somewhat counterintuitively — that separate trials for each Plaintiff would be more efficient than a single trial encompassing all four claims. Because Plaintiffs apparently did not work in the same department and did not have the same supervisors, different decision-makers were involved in the termination decisions, the circumstances surrounding their terminations varied, and their damages are separate. That is, given the different facts and circumstances surrounding each Plaintiff's claim, there does not appear to be much "overlapping" evidence. Consequently, the testimonial portions of the four trials will not be significantly longer than the testimonial portion of a single trial on all four claims. I have not disregarded the fact that four trials would include four opening statements and four closing arguments. Presumably, however, counsel would be required to address all four claims in their opening statements and closing arguments, even if a single trial is held. Thus, one trial on the Plaintiffs' four separate claims would not necessarily be more efficient. *See Cestone v. General Cigar Holdings, Inc.*, 2002 WL 424654 at *3 (S.D.N.Y. 2002) (concluding that "two shorter trials will be more efficient and less expensive than one long, combined trial"). In addition, I suspect it will be easier to empanel four juries for short periods of time, rather than a single jury for a prolonged trial. Moreover, I believe a single trial raises the potential for jury confusion. Instead of focusing on a single Plaintiff, and the facts and circumstances surrounding his or her claim, the jury would be required to consider four Plaintiffs' claims while keeping separate the testimony regarding each Plaintiff's claim of discrimination and his or her respective damages.

For these reasons, I believe that separate trials are preferable to promote clarity, judicial economy, and to avoid potential prejudice. *O'Dell*, 904 F.2d at 1202. Plaintiffs suggest, however, that "[a] different conclusion may or [may] not be reached after discovery has been conducted."[17] *See, e.g., Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 448 (S.D.N.Y. 1995) (concluding that a motion for separate trials under RULE 42(b) was premature because discovery was not yet complete). Accordingly, Plaintiffs ask that a decision not be made until after discovery is completed. Deere urges the Court to order separate trials at this time, arguing that Plaintiffs do not dispute the "key facts" and "[d]iscovery will not change this reality."[18] Deere notes that under current civil litigation practices in federal and state court, trial dates are often established early in the litigation. Accordingly, Deere worries that delaying the decision to order separate trials serves no practical purpose and "will create scheduling conflicts and potential delay."[19]

This case has been assigned to Judge Edward J. McManus. It is Judge McManus' practice to wait until dispositive motions, if any, have been resolved before establishing a trial date. In other words, whether Plaintiffs' claims are submitted in one trial or four trials, the trial or trials will not be scheduled until after he has ruled on any motions for summary judgment. Under these circumstances, there is no particular advantage in ruling on the issue of separate trials at this time. That is, a decision on whether there will be one or more trials can be made at the time the trial or trials are scheduled, without causing delay. In this way, Plaintiffs will be permitted an opportunity to develop evidence during discovery in support of their argument that the claims should be tried together.

---

[17] Plaintiffs' Brief in Resistance (docket number 10) at 5.

[18] Deere's Reply (docket number 12) at 4.

[19] *Id.* at 5.

Accordingly, I recommend that the Court deny Deere's motion to sever, without prejudice. The motion can be renewed after the Court has resolved any dispositive motions.

## IV. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Motion to Sever (docket number 8) filed by the Defendant be **DENIED WITHOUT PREJUDICE**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 24th day of July, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA